[No. 26021. Department One. March 12, 1936.]

A. L. E. SWANSON, *Appellant,* v. WHITE & BOLLARD, INC., *Respondent.*[1]

[1]Reported in 55 P. (2d) 332.

*Ralph Hammer,* for appellant.

*J. Speed Smith* and *Henry Elliott, Jr.,* for respondent.

GERAGHTY, J.—This is an appeal from a judgment of dismissal entered after the court had sustained a challenge to the sufficiency of the evidence and discharged the jury, at the close of appellant's case.

The appellant, with his mother, occupied an apartment in a building owned by the respondent, under a written lease, which required the tenant

" . . . to make, at his own cost and expense, all repairs and betterments necessary to be made upon the said premises during the full period of tenancy."

The appellant sustained an injury to his hand through the breaking of the porcelain handle of a hot water faucet in the kitchen sink, which he was turning off at the time of the injury. Appellant testified that the faucet was leaking and his mother had complained to Mr. and Mrs. Ramsey, who looked after the janitor work and were in charge of the building for the owners. Mr. Ramsey came to the apartment, went into the kitchen, and appellant asked him, "How does it come we are having so much trouble with this hot water faucet, it is leaking again?", and further, "You had better take a look at that handle. It seems to me like it is cracked. You had better fix it." Mr. Ramsey said, "All right."

Appellant was not present when the repair was made, and, being out of his apartment much of the intervening two or three days between the repair and the time of injury, paid no special attention to the faucet. At the time of injury, he was in the kitchen with his mother. She asked him to turn off the faucet as it was leaking again. He testified:

"I went up to turn off the hot water faucet, and the hot water faucet is on the left hand side as I approached the kitchen sink. I got ahold of the hot water faucet with my left hand, and turned it to the left, which is the proper way to turn that particular faucet, and as I turned it to the left all of a sudden the faucet snapped and the next thing I knew why I pulled my hand away from the faucet and took a look at the palm of my hand, and here was a large piece of the china or porcelain handle imbedded in the palm of my hand. . . . when the faucet broke away I kind of lunged forward, because I had my weight against the faucet, and I went forward, but I didn't lose my balance. I was on my feet, but I was pressing against the faucet, and when it snapped, my weight against the handle brought me forward, and I kind of lunged forward."

After the accident, he asked Mr. Ramsey what he had done to the faucet that it should leak so shortly after being fixed. Ramsey answered:

" 'Well, I took it apart and I didn't have any new washer, rubber washer, or gaskets,' I think he said, or washers, I don't remember what word he used, and so he said 'I took an old one and turned it upside down, and I figured that would do, because it has worked before.' "

The trial court sustained the challenge to the sufficiency of the evidence upon the ground that the respondent was under no duty to repair the faucet, and that, if any liability attached by reason of its gratuitous assumption of the repair, there was no causal connection between the repair of the washer to stop the leak and the breaking of the handle. The court was also of the view that, whatever the defect in the handle, it was as obvious to appellant as to respondent.

While, under the terms of the lease, the landlord was under no duty to make repairs and would not

be liable for a breach of its promise to repair, made subsequent to the execution of the lease and without consideration, there is authority for the rule that, even though a gratuitous executory contract would not be binding on a landlord, he would place himself in a different position if he should see fit to treat it as binding and actually enter upon its performance; that, while he is at liberty to repudiate the contract or to perform it at his option, if he chooses to perform he becomes under some measure of liability as to the manner of performance. 16 R. C. L. 1033. If respondent is liable at all, in the present case, it can be only under this view of the law,—that, having undertaken to repair the faucet, the respondent performed the work in such a negligent manner that injury resulted therefrom to the appellant.

The principal repair requested by the appellant was the correction of the leaky condition of the water faucet. Ramsey's attention was also called to the condition of the porcelain handle, which appellant said was cracked. Conceding, as claimed by appellant, that Ramsey promised to replace the handle, he did not do so, and appellant was in no way misled by his failure. Assuming that the repair of the washer within the faucet was improperly done by Ramsey, there was no causal connection between this fact and the breaking of the handle. Furthermore, as the leaky condition of the faucet continued, it was apparent to the appellant, as well as to respondent's manager, that the condition was unchanged.

Expressed in a few words, the relation of the parties was this: The appellant himself had agreed to make all the repairs. He asked Ramsey, the landlord's manager of the building, to make a repair for him that he himself was under a duty to make. Ramsey undertook to make the repair, but failed to do it in a

satisfactory manner. His failure was known to the appellant because the handle was unchanged, and the faucet continued to leak. The condition of the faucet was made no worse by Ramsey's gratuitous repair of it, or his failure to replace the handle.

We are of the opinion that the trial court correctly dismissed the action, and the judgment will be affirmed.

MILLARD, C. J., MITCHELL, TOLMAN, and STEINERT, JJ., concur.